UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-24124

KEDEM, LLC,

        Plaintiff/Counter-Defendant

v.

TEAM INTERNATIONAL GROUP
OF AMERICA, INC.,

        Defendant/Counter-Plaintiff

_____/

## ORDER DENYING SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant/Counter-Plaintiff Team International Group of America, Inc.'s Motion for Summary Judgment [DE-70]. On January 27, 2015, the Court heard argument from counsel on the motion. This action arises from a failed business venture between Plaintiff and Defendant to manufacture and market a vertical cooking device, for which Plaintiff holds two design patents. As a result of the unsuccessful business venture, Plaintiff, Kedem, LLC has filed a six count Second Amended Complaint.[1] In response, Defendant filed a four count counterclaim.[2]

---

[1] The six counts of Plaintiff's Second Amended Complaint are: (1) infringement of U.S. Design Patent Nos. D686,869 and D694,057; (2) breach of contract; (3) federal unfair competition, false description, and false designation of origin as to marks, 15 U.S.C. § 1125(a); (4) common law unfair competition and trademark infringement; (5) cancellation of Defendant's trademark registration no. 4351565; and (6) breach of compensation agreement.

[2] Defendant's counterclaim alleges claims for: (1) a declaration of invalidity of U.S. Design Patent No. D686,869; (2) a declaration of invalidity of U.S. Patent Design Patent No. D694,057; (3) a declaration as to who owns the trademark "Rollie" and whether it is a valid federal trademark registration; and (4) breach of contract.

Defendant now seeks summary judgment declaring U.S. Design Patent Nos. D686,869 and D694,057 invalid for anticipation and denying Plaintiff's trademark claims because Plaintiff is not the owner of the trademark at issue and Defendant never assigned the trademark to Plaintiff.[3] Because Defendant has not shown that the design was anticipated by earlier patents and publications and because genuine issues of material fact exist as to whether Defendant is the actual owner of the "Rollie" trademark, summary judgment is denied.

## I. UNDISPUTED MATERIAL FACTS[4]

Plaintiff, Kedem LLC (Kedem) is the assignee of U.S. Design Patent No. D686,869, issued July 30, 2013 (the '869 Patent). The '869 Patent is entitled "Assembly for Cooking Elongated Food Products." Kedem is also the assignee of U.S. Design Patent No. D694,057, issued November 26, 2013 (the '057 Patent). The '057 Patent is also entitled "Assembly for Cooking Elongated Food Products" and is a continuation of the '869 Patent. These design patents are for a cooking device for preparing molded food products (the Product). Specifically, they produce a cooked product in the shape of a long, thin cylinder.

Not having the ability to manufacture and market the Product itself, on December 16, 2011, prior to the issuance of the '869 and '057 Patents but while the applications were pending, Kedem entered into a Manufacture, Marketing & Distribution License Agreement (the Agreement) with Defendant Team International Group of America, Inc., doing business as Kalorik (TIGA). (DE-40-4.) Under the terms of the Agreement, Kedem licensed to TIGA the

---

[3]While Defendant's motion states that, if granted, it would be dispositive of all of Plaintiff's claims, if granted, it would also be dispositive of three of Defendant's counterclaims.

[4]Some facts have been taken from Plaintiff's Second Amended Complaint [DE-40]. Those facts are included to give a more complete picture but are not relevant to the decision.

2

right to "design, manufacture, market, sell and distribute" the Product. (*Id.* at § 5.1.) The Agreement included licenses for the design patent applications and the trademark "Eggmaster," which was used in conjunction with the Product. (*Id.* at §§ 5.4, 5.3.) The trademark license also stated that it included "any additional U.S. trademarks which Kedem may pursue and/or secure which are directly related to the Kedem Trademark," which was defined as the "Eggmaster" mark and any future trademarks. (*Id.* at § 5.3.1.) Additionally, the Agreement contained the following language:

> Kedem shall own all right, title, and interest to any additional trademark(s) or Trade Dress . . . for the Product, whether created by Kedem or TIGA, whether directly or indirectly.

(*Id.* at § 5.7.)

In the summer of 2012, TIGA and Kedem discussed other possible names for the Product and decided to change the name of the Product from "Eggmaster" to "Rollie."[5] (DE-71-3, ¶ 12.) In July 2012, TIGA filed a trademark application with the U.S. Patent and Trademark Office for the name "Rollie." (*Id.* at ¶ 13; DE-40-5.) The application named TIGA the owner of the trademark. (DE-40-5.) The application was filed pursuant to 15 U.S.C. § 1051(b). (*Id.*) Kedem objected to the filing but TIGA has refused to cancel or transfer to Kedem the Rollie trademark registration. (*Id.* at ¶ 15.)

As a result of this and other alleged breaches of the Agreement, on April 12, 2013, Kedem delivered a notice of breach to TIGA, pursuant to the terms of the Agreement. TIGA

---

[5]The facts relating to these discussions and the development of the Rollie trademark are of great import to determining who owns the trademark -- one of the issues before the Court. However, neither side has presented these facts to the Court as part of the summary judgment briefing. These facts will have to be presented at trial.

responded by stating that it had substantially complied with the Agreement and continued to market the Product. In November 2013, Kedem filed the instant lawsuit alleging six counts against TIGA. TIGA filed its counterclaim and a third-party complaint against Ramcon Corp., a company owned by the same person who owns Kedem. TIGA now moves for summary judgment on all counts of Kedem's complaint. TIGA argues that summary judgment is appropriate because the design patents at issue are invalid and because Kedem is not the owner of the Rollie trademark and, thus, Kedem cannot bring its trademark claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and

4

admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. DISCUSSION

### A. Defendant Has Not Established that the '689 and '057 Design Patents Were Anticipated by the Prior Art

TIGA maintains that the '689 and '057 Design Patents are invalid because they were anticipated by Kedem's U.S. Patent Application Publication No. 2011/256302 (Publication 302). Specifically, TIGA asserts that Figures 45, 45A, 51, 52, and 53 in Publication '302 are virtually identical or substantially similar to the aesthetic design in the '689 design patent and the '057 design patent. TIGA has not met its burden to establish invalidity and, therefore, summary judgment is not appropriate.

The parties agree that the test to determine whether a design patent is invalid as anticipated is the "ordinary observer" test. *See International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). The ordinary observer test was set out by the Supreme Court in *Gorham Manufacturing Co. v. White*, 81 U.S. 511, 528 (1871):

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Further, invalidity must be established by clear and convincing evidence. *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001). Thus, in order to prevail, TIGA must show,

5

by clear and convincing evidence, that an ordinary observer would find the design in Figures 45, 45A, 51, 52, and 53 of Publication '302 substantially similar to the designs in the '689 and '057 Design Patents, such that the purchaser would be induced to purchase one, thinking it is the other.

TIGA has not shown by clear and convincing evidence that the designs are substantially similar. Comparing the drawings in the '689 and '057 Design Patents with Figures 45, 45A, 51, 52, and 53 in Publication '302 does not clearly lead to the conclusion that they are substantially similar such that an ordinary observer would be deceived into purchasing one believing it to be the other. Even a cursory review of the drawings shows differences, such as the two similar sized circles near the bottom of the patented designs versus the one large circle flanked by two small circles in the same spot in the figures from the '302 publication, differences in texture between the middle portions of the patented designs and the figures from the '302 publication, and distinctly different designs of the upper rim of the devices. Because of these differences, a genuine issue of material fact exists as to whether an ordinary observer would find the designs in the Patents and the Publication substantially similar. Consequently, summary judgment on invalidity is denied.

**B. Genuine Issues of Material Fact Exist as to Who Owns the "Rollie" Trademark**

TIGA moves for summary judgment on Counts III, IV, and V of the Second Amended Complaint because it, not Plaintiff, owns the Rollie trademark. TIGA maintains that these three claims are premised on Kedem owning the Rollie trademark and, therefore, the claims all fail

6

because Kedem does not own the trademark. At issue is interpretation of paragraph 5.7 of the parties' Agreement, which states, in relevant part:

> Kedem shall own all right, title, and interest to any additional trademark(s) or Trade Dress . . . for the Product, whether created by Kedem or TIGA, whether directly or indirectly.

TIGA interprets this clause as an assignment of any trademark or trade dress obtained by TIGA and, as such, TIGA argues it is invalid. Kedem asserts that the clause is not an assignment but a contractual agreement regarding ownership. According to Kedem, TIGA breached this clause of the Agreement when it filed the trademark application listing itself as the owner of the Rollie trademark.

TIGA's motion just assumes that it is the proper owner of the Rollie trademark based on the filing of the trademark application. Based on this assumption, TIGA asserts that the only plausible interpretation of § 5.7 is as an assignment clause. There are two problems with TIGA's arguments: First, TIGA's insistence that this clause is an assignment is not supported by the language used in § 5.7 or the rest of the Agreement. There is no use of the term "assign," or its derivatives, in § 5.7. There is nothing in the language of this clause or the rest of the Agreement indicating that the parties intended this clause to be an assignment of future obtained intellectual property. Second, the record does not support TIGA's assumption that it is the owner of the Rollie mark.

There is no record evidence establishing TIGA's ownership of the mark at the time TIGA filed the trademark application. While TIGA's reply correctly argues that ownership of a trademark is based on usage, there is no record evidence that TIGA used the Rollie trademark in commerce prior to filing the trademark application. In fact, at the January 27 hearing, TIGA's

7

counsel conceded that it had no knowledge or evidence of use of the Rollie mark prior to the filing of the Rollie trademark application with the U.S. Patent and Trademark Office. Furthermore, the application was filed pursuant to 15 U.S.C. § 1051(b), which permits the filing of an application based on a bona fide intention to use the mark in commerce, as opposed to an application based on a mark's prior use in commerce. Thus, at the time the trademark application was filed it appears that TIGA had not yet used the mark in commerce. Given § 5.7 of the Agreement, which made Kedem the owner of any trademark developed for use with the Product, Kedem would be the owner of the Rollie mark, if it were developed for use with the Product.[6]

At the hearing, TIGA asserted that the Rollie mark was developed for use with many products, not just the Product at issue here. Thus, TIGA argues that the Rollie mark was not covered by § 5.7 of the Agreement. Under these circumstances, a genuine issue of material fact exists as to whether TIGA was the owner of the mark at the time TIGA filed the trademark application. Thus, at trial, a jury must determine whether the Rollie mark falls with the language of § 5.7 as a mark "for the Product, whether created by Kedem or TIGA, whether directly or indirectly." Consequently, as noted earlier, the facts surrounding the development of the mark and the agreement to use the mark in conjunction with the Product are key facts and will need to

---

[6]Courts have noted that parties to a contract can agree to ownership of future developed intellectual property. *See Pinnacle Pizza Co. v. Little Caesar Enterprises, Inc.*, 560 F. Supp. 2d 786, 800-01 (D.S.D. 2008) (enforcing contract that stated that defendant has 'the sole right to use such trademarks . . . presently existing or to be acquired in the future'"); *Pilot Corp. of America v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292, 298 (D. Conn. 2007) (noting that ownership of intellectual property can be transferred either before or after it is created).

be presented at trial to allow a jury to determine whether the mark was developed "for the Product." As a result, summary judgment must be denied.

Accordingly, it is hereby

ORDERED that Defendant/Counter-Plaintiff/Third-Party Plaintiff Team International Group of America, Inc.'s Motion for Summary Judgment [DE-70] is DENIED.

DONE and ORDERED in Miami, Florida, this 30th day of January, 2015.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record